CLERK'S OFFICE U.S. DIST COURT
AT LYNCHBURG, VA
FILED
for Charlottesville
MAR 0 2 2006
JOHN F. CORCORAN, CLERK
BY: /s/ Jay Coleman
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>TIMOTHY FENNON SAMPSON,<br><br>*Defendant.* | CRIMINAL CASE NO. 3:05-CR-00011<br><br>MEMORANDUM OPINION<br><br>JUDGE NORMAN K. MOON |

This matter comes before the Court on Defendant's Motion to Sever and Motion To Exclude evidence, both filed February 21, 2006. The Court heard argument on February 27, 2006. For the reasons stated below, the Court will deny the motion to sever, and deny in part and grant in part the motion to exclude.

## I. BACKGROUND

On March 2, 2005, Defendant was charged with conspiracy to commit perjury (Count One); perjury (Count Two); provision of material and false information (Count Three); subornation of perjury (Count Four); and two counts of intimidating and threatening to kill to obstruct justice (Counts Five and Six).

Count One alleges that Defendant and a co-conspirator, Jerry Mills, devised a scheme to lie to law enforcement officials and commit perjury before a Grand Jury investigating a triple homicide (referred to in the indictment as the "Violation") in order to collect reward money offered by law enforcement organizations and to obtain lenient treatment in Mills' then pending state narcotics cases. (Indict. ¶¶2–4). In furtherance of the conspiracy, Defendant allegedly

1

contacted Captain Bobby Wayne Lawson of the Rockingham County, North Carolina Sheriff's Office in August 2003, claiming to be an eye-witness to the murders. (Indict. ¶5(A)). The indictment also lists the following as overt acts in furtherance of the conspiracy:

> D. On or about October 6, 2003, TIMOTHY FENNON SAMPSON provided material and false information to members of the task-force investigating the Violation.
> E. On or about October 7, 2003, in Charlottesville, Virginia, TIMOTHY FENNON SAMPSON appeared as a witness before the Grand Jury, and being under oath, testified falsely with respect to the aforesaid material matters . . . .
>
> . . .
>
> J. On or about December 21, 2003, in the late evening hours, TIMOTHY FENNON SAMPSON, called Major K.G. Nester, of the Henry County, Virginia Sheriff's Office, and threatened to kill Nester, and Captain Bobby Wayne Lawson, of the Rockingham County Sheriff's Office. The call was made to Major Nester's home phone in Henry County Virginia. Among other threats, SAMPSON said that he would use a firearm to "to blow you mother-fucking, God-damn heads off."
> K. On or about December 21, 2003, in the early morning hours, in Rockingham County, North Carolina, TIMOTHY FENNON SAMPSON again threatened to kill Major K.G. Nester, of the Henry County Sheriff's Office, and Captain Bobby Wayne Lawson, of the Rockingham County Sheriff's Office.

(Indict. ¶¶5(D), (E),(J), (K)).[1]

Overt acts "J" and "K" are charged separately in Counts Five and Six. Count Five charges that on December 21, 2003, Defendant corruptly threatened to kill Nester in order to obstruct "the due administration of justice . . . in connection with the federal Grand Jury proceeding" investigating the triple homicide. (Indict., Ct. 5). Count Six similarly charges that on December 21, 2003, Sampson corruptly threatened to kill Lawson in order to obstruct "the due administration of justice . . . in connection with the federal Grand Jury proceeding . . . ." Neither count offers further explanation of how the threats connected to the Grand Jury proceedings.

---

[1] The indictment lists a total of 14 overt acts; thus, the excerpted list is not exhaustive.

2

Responding to Defendant's Motion to Sever, the Government has proffered additional facts that it argues shows that the threats were an integral part of the overall conspiracy. "For quite some time" after the October 7, 2003 Grand Jury hearing, the Government alleges, "Captain Lawson and Major Nester were in frequent, at times daily, contact with Defendant." (Gov't Resp. at 2-3). During this period, Defendant "was trying to maintain control of the situation in order to prevent the task-force officers from learning that he had lied to them and in the grand jury." *Id.* at 3. For example, when task force-officers including Lawson and Nester tried to corroborate Defendant's claim that he was in the victims' backyard because he was transporting stolen goods up to Roanoke, Virginia and had stopped to go to the bathroom and scope out houses for additional items to steal, Defendant had two people who were interviewed because of their possible knowledge of the stolen goods lie to the officers for him. *Id.* Despite these efforts, Defendant's lies became known to task-force members; he became desperate and violent and threatened to kill Captain Lawson and Major Nester in order to "get them to back off in their investigation." *Id.* at 3-5.

## II. DISCUSSION

Defendant argues that joinder of Counts One, Two, Three and Four, which he refers to as the "perjury charges," with Counts Five and Six, which he refers to as the "threat charges," was improper under Fed. R. Crim. P. 8(a). In the event the Court finds joinder proper under Rule 8(a), he asks that it exercise its discretion to order severance under Rule 14(a).

### A. <u>Propriety of Joinder Under Rule 8(a)</u>

Defendant argues that the indictment's bare, unsubstantiated assertion that the threat charges have a "connection with the federal Grand Jury proceeding" from which the perjury

3

charges stem does not satisfy the test for joinder under Rule 8(a), in the absence of any other allegations showing a logical relationship between the perjury charges and threat charges.

Rule 8(a)[2] provides:

> The indictment or information may charge a defendant in separate counts with 2 or more offenses if the offenses charged—whether felonies or misdemeanors or both—are of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan.

The Court agrees with Defendant that the indictment standing alone does not show that the threat charges were properly joined. The indictment fails to explain how a scheme to cooperate with law enforcement under false pretenses and lie before a Grand Jury on October 7, 2003, in order to collect reward money would be furthered by, or in any way related to, death threats against investigating officials over two months later.

Therefore, the Court must determine whether it is proper to consider the Government's proffer of facts not contained in the indictment demonstrating the propriety of joinder. *See* Gov't Resp. at 2-5. In a recent decision, the Fourth Circuit stated that "we need not decide whether the district court may consider such [pretrial] proffers in ruling on a motion to sever" and cited numerous cases showing a split of authority on the question. *United States v. Cardwell*, 433 F.3d 378, 385 n.1 (4th Cir. 2005).

Of the circuits holding that the propriety of joinder under Rule 8 must be assessed by

---

[2] At least in cases in which a defendant argues misjoinder under Rule 8(a), the Fourth Circuit does not follow the "firmly established" proposition that the propriety of joinder in multi-defendant cases is tested under Rule 8(b) alone, and that Rule 8(a) has no application even when a defendant challenges only the joinder of *offenses* against himself. 1A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 144 (3d ed. 1999) (collecting cases); *see United States v. Cardwell*, 433 F.3d 378 (4th Cir. 2005).

4

examining allegations in the indictment alone, none appeared to offer a policy justification for extending this "indictment-only" rule outside the situation that arose in *United States v. Schaffer*, 362 U.S. 511 (1960). In *Schaffer*, the Supreme Court reviewed a district court's decision not to sever co-defendants after a lack of evidence offered at trial caused it to dismiss the conspiracy count that had provided the sole foundation for the defendants' joinder under Rule 8(b). The Court affirmed the lower court's decision not to sever, holding that "where, as here, the charge which originally justified joinder turns out to lack the support of sufficient evidence . . . [t]he terms of Rule 8(b) having been met [in the indictment] and no prejudice under Rule 14 having been shown, there was no misjoinder." *Id.* at 514. Thus, under *Schaffer*, as long as it appears that joinder under Rule 8 was proper at the outset, as evaluated solely by allegations in the indictment, a motion for severance brought at the close of the government's evidence is governed by Rule 14.

As the Eleventh Circuit explained, the indictment-only rule makes sense in *Schaffer*-type situations—"when the indictment evidences the requisite connection between the charges, but the evidence at trial takes an unexpected turn that vitiates the basis for joinder"— because of the unfairness of reevaluating joinder at a later stage using information "that was not and could not have been known to the prosecutor at the time the indictment was brought." *United States v. Dominguez*, 226 F.3d 1235, 1240 (11th Cir. 2000). However, there is no parallel policy reason supporting application of the indictment-only rule to prevent the prosecutor from proffering information pretrial in support of joinder. Thus, the Court agrees with the Eleventh Circuit's

5

conclusion:[3]

> [W]e do not believe the 'indictment only' rule applies to invalidate joinder, instead of to justify it .... [T]hat rule is not applicable to situations when the evidence proffered by the government before trial or adduced during trial shows that initial joinder was proper even though the indictment may not have explicitly stated the connection between the charges. It is enough that when faced with a Rule 8 motion, the prosecutor proffers evidence which will show the connection between the charges.

*Id.* at 1240-41.

In light of the Government's proffer, the Court finds that the threat charges were properly joined under the "common scheme or plan" prong of Rule 8(a). The Fourth Circuit interprets this prong flexibly, requiring only that joined offenses have a logical relationship to one another. *Cardwell*, 433 F.3d at 385. "Such a relationship exists when consideration of discrete counts against the defendant paints an incomplete picture of the defendant's criminal enterprise." *Id.* Defendant allegedly threatened the officers in order to obstruct the Grand Jury investigation; he hoped the threats would deter them from further investigating or bringing to light his previous perjury before the Grand Jury. Conclusive exposure of Defendant's perjury would destroy both goals of the conspiracy: to obtain reward money and secure leniency toward Mills in his state law case. Although the threats signaled desperation and had a small likelihood of success, Defendant employed them as a means to keep the conspiracy alive and accomplish its goals. The threats were thus integrally connected to the overall scheme and properly joined as separate offenses.

### B. Severance under Rule 14(a)

Defendant also asks the Court to exercise its discretion to order severance under Rule

---

[3] This position is also supported by the D.C. Circuit and the First Circuit. *See United States v. Halliman*, 923 F.2d 873, 993 (D.C. Cir. 1991); *King v. United States*, 355 F.2d 700, 704 (1st Cir. 1966).

14(a), which provides: "If the joinder of offenses . . . in an indictment . . . appears to prejudice a defendant . . . , the court may order separate trials of counts . . . or provide any other relief that justice requires." When offenses are properly joined under Rule 8(a), a district court should grant a severance under Rule 14 only if there is a "serious risk" that joint trial of the offenses would "prevent the jury from making a reliable judgment about guilt or innocence." *Cardwell*, 433 F.3d at 387 (quoting *Zafiro v. United States*, 506 U.S. 534 (1993)). A showing that severance would result in a "better chance of acquittal" is not sufficient. *Id.*

Defendant argues that jurors' ability to engage in a calm, detached consideration of the perjury charges will be hindered, and his right to a fair trial compromised, unless severance is granted because the Government will necessarily introduce shocking, violent statements to prove the threat charges. (D. Mot. Sever at 5-6). The Court will accept—with deciding its merits—Defendant's premise that evidence of the statements would not be admissible in a separate trial of just the perjury counts. Defendant has also filed a motion in limine seeking exclusion of other alleged statements of his that show his racist and violent nature, on grounds that they create a risk of unfair prejudice that substantially outweighs their probative value. (D. Mot. in Lim.).

The Court believes that the risk of unfair prejudice can be avoided by excluding purely racist statements and ordering the Government to redact other statements otherwise admissible to exclude especially inflammatory racist words and attitudes. Further, the Court finds that these redactions, coupled with limiting instructions reminding the jury that separate charges must be considered separately,[4] brings this case outside the "rare"[5] circumstances requiring severance

---

[4] The Fourth Circuit has often upheld a district court's decision to rely on limiting instructions rather than the more radical remedy of severance. *See, e.g., United States v. Najjar*,

7

under Rule 14. Limiting instructions are especially likely to be effective where, as here, despite the connection of the charges as part of one overall scheme, evidence of one set of charges is "distinct and easily segregated" from evidence of the other charges. *Cf. United States v. Mackins*, 315 F.3d 399, 415 (4th Cir. 2003).

## CONCLUSION

The "perjury charges" and "threat charges" were properly joined under Rule 8(a) because the facts as alleged in the indictment and in the Government's pretrial proffer show that they are connected with or constitute parts of a common scheme or plan. The Court declines to order severance under Rule 14 because the redactions and limiting instructions proposed above will adequately ensure Defendant's right to a fair trial. Also, the Court will grant in part Defendant's motion in limine to exclude various statements as proposed above. Thus, Defendant's motion to sever will be denied, and his motion to exclude will be denied in part and granted in part in an order to follow.

It is so ORDERED.

The Clerk of the Court is hereby directed to send a certified copy of this Opinion to all counsel of record.

ENTERED: *[signature]*
U.S. District Judge

March 2, 2006
Date

---

300 F.3d 466, 475 (4th Cir. 2002); *United States v. Cole*, 857 F.2d 971, 974 (4th Cir. 1988); *United States v. Porter*, 821 F.2d 968, 972 (4th Cir. 1987).

[5] *See Cardwell*, 433 F.3d at 387.

8